# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | § |
| | § Case No.: 5:21-cr-52-FB |
| Plaintiff, | § |
| | § |
| v. | § |
| | § |
| CHANCE ANTHONY UPTMORE, | § |
| | § |
| Defendant. | § |

## GOVERNMENT'S PROPOSED
## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The United States proceeded to trial against Defendant Chance Anthony Uptmore by way of a bench trial before this Court on April 11, 2022. After listening to the presentation of evidence and argument by both parties, the Court makes the following findings of fact.

## PROPOSED FINDINGS OF FACT

1. On January 18, 2021, San Antonio-based FBI agents and other law enforcement officers executed a search warrant of 15411 Pebble Gate, San Antonio, Texas, located in the Western District of Texas. The Defendant, Chance Uptmore, and his father James reside at 15411 Pebble Gate. The search warrant was authorized by U.S. Magistrate Judge Henry J. Bemporad of the Western District of Texas on January 17, 2021. The purpose of the search warrant was to collect evidence in connection with an investigation into the Defendant and his father's involvement in the January 6, 2021, insurrection at the U.S. Capitol in Washington, D.C.

2. While executing the search warrant, law enforcement officers were alerted to the fact that a loaded handgun was located in the front left bedroom of the residence. The Defendant alerted law enforcement officers to this fact, and the bedroom in which the loaded handgun was located belonged to the Defendant.

3. The loaded handgun was identified by FBI agents as a loaded, 5-shot Taurus .38 Special revolver bearing serial number LF67128, in the drawer of a nightstand next to the Defendant's bed in an unlocked plastic case.

4. The 5 shot Taurus .38 Special revolver bearing serial number LF67128 was manufactured in Brazil after the year 1898, and thus traveled in interstate and foreign commerce before being discovered in Defendant's bedside nightstand.

5. As FBI agents searched 15411 Pebble Gate, they discovered various controlled substances in the Defendant's bedroom and adjacent den area. Specifically, the following controlled substances and their total gross weights were discovered by law enforcement officers:

 a. Marijuana totaling a gross weight of 13.07 pounds;

 b. Tetrahydrocannabinol (THC) edible products totaling a gross weight of 1.81 pounds;

 c. THC waxes, dabs, and oils totaling a gross weight of 1.19 pounds; and

 d. Psilocin mushrooms totaling a gross weight of 0.32 pounds.

6. Samples of the various controlled substances seized by FBI agents from the Defendant's residence were submitted to the Drug Enforcement Administration's South Central Laboratory in Dallas, Texas for chemical analysis. The results of this analysis concluded that the controlled substances seized from the Defendant's residence tested positive for marijuana, THC, and psilocin.

7. Marijuana and its derivatives, including THC, as well as psilocin mushrooms, are Schedule I controlled substances as defined in Section 102 of the Controlled Substances Act (21 U.S.C. § 802, *et seq*.), found at 21 U.S.C. § 812.

8. On January 18, 2021, in a non-custodial, Mirandized, recorded interview conducted by FBI agents at the Defendant's residence, the Defendant admitted that all controlled substances

discovered in his home belonged to him. The Defendant stated that he "smokes a shit-ton" of marijuana and THC oil, and that he uses psilocin mushrooms to get into a "flow state" to balance out the effects of his marijuana smoking.

9. On January 21, 2021, in a non-custodial, Mirandized, recorded interview conducted by FBI agents at FBI headquarters in San Antonio. During this interview, the Defendant admitted to consuming marijuana or THC products "every day," and described himself as a "weedaholic."

10. During the January 21, 2021, interview, the Defendant admitted to his daily routine of drug consumption:

    a. Smoking THC rosin oil or dab in the morning soon within an hour of waking up;

    b. "Rolling up blunts and smoking them all day," because the Defendant characterizes himself as "mainly a blunt smoker" who smokes on average "five to ten blunts per day;"

    c. The Defendant stated that he prefers smoking marijuana blunts "because you can travel with them;" and

    d. Using THC edibles at night to "knock out" before going to sleep.

11. During the January 21, 2021, interview, the Defendant admitted to supplementing his marijuana consumption with psilocin mushrooms, consuming them through "micro-dosing," where he uses them to be "productive or get into a flow state."

12. During the January 21, 2021, interview, the Defendant admitted that he purchases marijuana in bulk quantities in order to save money on his drug purchases. The Defendant describes himself as a "connoisseur" of marijuana, who estimates his purchases of marijuana as "at least" $1,000 per month.

13. During the January 21, 2021, interview, the Defendant admitted to "smoking [marijuana] constantly," and that there had not "been a day where [he] had not gotten high all day in at least six months, maybe even a year."

14. During the January 21, 2021, interview, the Defendant admitted that despite FBI agents seizing his narcotics during the January 18, 2021, execution of the search warrant at his residence, he rolled a marijuana blunt with "just the crumbs" of marijuana left over at his home and smoked that blunt after FBI agents left his home.

15. During the January 21, 2021, interview, the Defendant stated to FBI agents that if they were to test the Defendant's urine for the presence of narcotics, that the THC levels in his urine would be "extremely high."

16. On January 21, 2021, the Defendant voluntarily provided FBI agents with a urine sample for chemical analysis. The Defendant's urine sample was submitted to the Chemistry Unit of the FBI Laboratory in Quantico, Virginia for forensic toxicology analysis. The results of this analysis revealed that cannabinoids, the metabolite of Delta-9 THC, the chemical found in marijuana, were present in both urine samples tested from the Defendant's urine submission. The results of this analysis further revealed that 3,4-methylenedioxymethamphetamine (MDMA) and 3,4-methylenedioxyamphetamine (MDA), the active metabolite of MDMA, were both present in one of the two urine samples tested from the Defendant's urine submission.

## **PROPOSED CONCLUSIONS OF LAW**

The Court concludes that the Defendant should be found guilty as to the single count of the Indictment, charging with him of being an unlawful user in possession of a firearm in violation of 18 U.S.C. § 922(g)(3). The Court reaches this conclusion because the Government has proven beyond a reasonable doubt that on January 21, 2021, the Defendant was an unlawful user of or

otherwise addicted to marijuana and psilocin mushrooms, both of which are classified as controlled substances as defined in Section 102 of the Controlled Substances Act (21 U.S.C. § 802, *et seq*.), found at 21 U.S.C. § 812, and was found in possession of a firearm, to wit, a Taurus .38 Special revolver, serial number LF67128, which traveled in interstate and foreign commerce prior to the Defendant possessing said firearm.

The Court's specific conclusions as to each element of Count One of the Indictment are set forth more fully below:

### I. Chance Uptmore was an Unlawful User of or Addicted to Controlled Substances on January 18, 2021

The evidence presented at trial makes clear, through the Defendant's own recorded admissions and the corroborating physical evidence, that the Defendant was an unlawful user of and otherwise addicted to controlled substances on January 18, 2021. In defining what it means to be an unlawful user of or otherwise addicted to a controlled substance, the Fifth Circuit utilizes a plain meaning test, or what "an ordinary person" would interpret an unlawful user to be. *See*, *e.g.*, *United States v. Edwards*, 182 F.3d 333, 335 (5th Cir. 1999) (defendant admitted that he used marijuana on a daily basis and had done so for the past two or three years, qualifying him as an unlawful user of a controlled substance); *United States v. Patterson*, 431 F.3d 832, 836 (5th Cir. 2005) (an ordinary person would understand defendant, who stated that he regularly used marijuana and whose urine sample tested positive for marijuana, was an unlawful user).

While there is no threshold amount or frequency for what qualifies an individual as an unlawful user of or otherwise addicted to a controlled substance, a recent Fifth Circuit decision on an appeal from a trial court conviction from the Austin Division of the Western District of Texas is instructive as to why Uptmore's drug consumption satisfies the requirements of § 922(g)(3). In *United States v. May*, the evidence presented at trial established that the defendant smoked

marijuana "after gun shows," and used marijuana "on a regular basis." 538 F. App'x 465 (5th Cir. 2013). At trial, the Government introduced evidence establishing that during a search of the defendant's home, three ounces of marijuana and 170 Valium pills were seized. *United States v. May*, Appellee's Br. at 4-5. This evidence was sufficient for the Fifth Circuit to conclude that "an ordinary person would understand that [defendant's] use of marijuana while in possession of firearms established him as an 'unlawful user' in violation of § 922(g)(3). 538 F. App'x at 465-66.

Here, Uptmore's drug consumption well exceeds that of the defendant in *May*. The evidence presented at trial establishes that the Defendant was forthright with law enforcement agents about the extent of his drug consumption. Defendant stated to law enforcement agents that: "I don't think there has been a day I haven't gotten high all day in at least like, six months, maybe even a year." He further described researching the marijuana laws in Washington D.C. in advance of his attending the January 6th insurrection at the U.S. Capitol, so that he could purchase and continue to consume marijuana while in Washington.[1] Indeed, his dependence on marijuana was so pronounced that he admitted to smoking the "crumbs" of marijuana left behind by law enforcement officers after the Defendant's home was searched on January 18, 2021. Finally, the Defendant was clear to law enforcement officers about the extent of his consumption, estimating his daily intake of smoking "five to ten blunts a day," using THC edibles to sleep, and using "micro-doses" of Psilocybin mushrooms to balance out the effects of his marijuana consumption.

The physical evidence introduced at trial by the United States corroborates the Defendant's confessions to law enforcement officers. More than sixteen pounds of marijuana and other THC

---

[1] While not binding upon this Court, a recent decision from the Sixth Circuit in affirming a § 922(g)(3) conviction is instructive. There, the evidence presented at trial "established that [defendant] was a lifelong marijuana enthusiast, both before and during the time he possessed firearms. That pattern of behavior, combined with his knowledge of marijuana laws that he testified to at trial, put him on notice that he was an unlawful user of drugs under § 922(g)(3)." *United States v. Lundy*, 2021 WL 5190899 (6th Cir. Nov. 9, 2021) (citing *Patterson*, 431 F.3d at 836).

products were seized from the Defendant's residence, along with one-third of a pound of psilocin mushrooms. The sheer quantity of narcotics substantiates the Defendant's estimates of the frequency of his drug use of "five to ten blunts" per day. *See United States v. Edwards*, 182 F.3d 333, 336 (5th Cir. 1999) (affirming § 922(g)(3) conviction where defendant stated to law enforcement officers that he used marijuana on a daily basis for the past two or three years). The Defendant further stated to FBI agents that if they were to test his urine, that his THC levels would be "extremely high." The Defendant submitted a urine sample to confirm his confession, and the forensic analysis of his urine did indeed show the presence of THC (along with MDMA). *See Patterson*, 431 F.3d at 836 (affirming § 922(g)(3) conviction where defendant's urine sample tested positive for marijuana).

In sum, an ordinary person would have no difficulty interpreting Defendant's drug consumption as qualifying him as an unlawful user of or addicted to controlled substances. The evidence presented at trial established that Defendant voluntarily admitted to smoking marijuana and its derivative products on a daily basis for at least six months and up to a year preceding his arrest. Indeed, his marijuana consumption was so pronounced that he needed to utilize additional controlled substances to counteract the effects of marijuana. Consistent with decades of Fifth Circuit jurisprudence of what an ordinary person would understand an unlawful user of controlled substances to be, Defendant's drug consumption qualifies him as an unlawful user or addicted to controlled substances within the meaning of 18 U.S.C. § 922(g)(3) on January 18, 2021.

## II.    Chance Uptmore Possessed the Loaded Taurus .38 Special Revolver Bearing Serial Number LF67128 on January 18, 2021

The evidence presented at trial more than establishes that the Defendant possessed the Taurus .38 Special revolver bearing serial number LF67128 discovered in the Defendant's bedside nightstand. Possession can be either actual or constructive. *United States v. McKnight*, 953 F.2d

898, 901 (5th Cir. 1992). In order to find that an individual had possession over an item, the evidence must support "at least a plausible inference that the defendant had knowledge of and access to the weapon or contraband." *United States v. Ybarra*, 70 F.3d 362, 365 (5th Cir. 1995). The most common method for a factfinder to determine whether a defendant possessed an item is whether that individual had the ability to exercise dominion and control over the item. *See*, *e.g.*, *United States v. Herrera*, 446 F.3d 283, 287 (5th Cir. 2006).

To convict the Defendant under 18 U.S.C. § 922(g)(3), the Government is required to prove that the Defendant's unlawful consumption of or addiction to controlled substances is contemporaneous with his possession of a firearm. *United States v. McCowan*, 469 F.3d 386, 392 n.7 (5th Cir. 2006) (citing *United States v. Purdy*, 264 F.3d 809, 812-13 (9th Cir. 2001)). The evidence presented at trial establishes that the Defendant had knowledge of and access to the Taurus handgun. Upon first encountering law enforcement officers, the Defendant alerted them to the presence of a firearm in his bedroom. The Taurus was located directed next to the bed in an unlocked case in the Defendant's bedroom. Finally, as discussed above, at the time the firearm was discovered, the Defendant admitted to being an unlawful user of controlled substances. Thus, the evidence presented at trial is more than sufficient to establish that the Defendant's possession of the loaded Taurus .38 Special revolver bearing serial number LF67128 located in his bedside nightstand on January 18, 2021, was contemporaneous with his unlawful use of and addiction to controlled substances.

### III. **The Loaded Taurus .38 Special Revolver Bearing Serial Number LF67128 Traveled in Interstate or Foreign Commerce Prior to Chance Uptmore Possessing it on January 18, 2021**

The Taurus .38 Special revolver bearing serial number LF67128 discovered in the Defendant's bedside nightstand clearly traveled in interstate or foreign commerce before the Defendant possessed it. The firearm bears stamps indicating that it was manufactured in Brazil and

8

imported into Florida. The testimony provided by ATF Interstate Nexus expert KeDarius Harris confirmed that the firearm traveled in interstate or foreign commerce before the Defendant possessed it.

## CONCLUSION

The evidence presented at trial is sufficient to establish, beyond a reasonable doubt, that on January 18, 2021, the Defendant, Chance Anthony Uptmore, knowing that he was an unlawful user of and addicted to a controlled substance as defined in Title 21, United States Code, Section 802, did knowingly possess a firearm and ammunition, to wit: a Taurus .38 Special revolver bearing serial number LF67128, and that firearm traveled in interstate and foreign commerce prior to his possessing it, all in violation of Title 18, United States Code, Section 922(g)(3)

Respectfully submitted,

ASHLEY C. HOFF
United States Attorney

_/s/_
MATTHEW W. KINSKEY
Assistant United States Attorney
Texas State Bar No. 24094779
601 NW Loop 410, Suite 600
San Antonio, Texas 78216
(210) 384-7330

MARK T. ROOMBERG
Assistant United States Attorney
Texas State Bar No. 24062266
601 NW Loop 410, Suite 600
San Antonio, Texas 78216
(210) 384-7179

## CERTIFICATE OF SERVICE

I hereby certify that on April 12, 2022, a true and correct copy of the foregoing instrument was electronically filed with the Clerk of the Court using the CM/ECF System, which will transmit notification of such filing to the parties of record.

/s/
Matthew W. Kinskey
Assistant United States Attorney